We have six cases before the court this morning, four of them are an argument, two of them have been presented by briefs. So we're going to start with the first case, Parra v. DHS. Mr. Martinez, I understand you've reserved three minutes of your time for rebuttal, is that correct? Yes, Your Honor, I do appreciate it. Good morning. We're here in front of you in order to review a decision by an arbitrator where he sustained the removal of a federal employee, specifically a Border Patrol agent, Adrian Apata. Adrian Apata worked in El Paso sector of the U.S. Border Patrol. The U.S. Border Patrol, among other places, was stationed or headquartered in El Paso, Texas, and that's where I office. When we had this matter come before the arbitrator, and I'm going to try not to restate matters that we brought in our brief, this had to deal with the removal due to a restriction on your driver's license. Ms. Parra had a DUI, and in the state of New Mexico, the state puts on a restriction, an interlock restriction, where you have to physically blow into a vehicle before operating the vehicle. When we had this case come up, the removal notice stated that Ms. Parra was a GS-11 employee. In fact, that initial notice was rescinded because the agency got the GS level incorrect. So they corrected it. They gave her the notice of removal. That was in October 24, 2014. Counselor, so this device that you're talking about that she has to blow into in order to make the vehicle operable, do the vehicles of CBP have that already on them, or would they have to have been modified? They do not have them on there, and in fact... So for Ms. Parra to drive, the vehicle would have to have been modified. Correct, to drive a government vehicle. Right. Yes, and that was never in dispute. When we got forward through the case, Your Honor, we talked about several types of accommodations or issues that were going on. For example, we talked about how agents work administrative duties, where they would not regularly or have to drive a vehicle. In fact, that's the job that she had been doing for close to a year at the time of the removal. Second, in the hearing... Before the removal? That is correct, sir. She wasn't driving a government vehicle? She was not. She was on administrative-like duty as a result of some personal issues. Correct. She was put on administrative duties for a disciplinary matter. At some point, that disciplinary kind of faded away, and the agency went forward with the removal based on the interlockee restriction, but they kept her on administrative duties. Further, there was evidence in the hearing that basically there was a group of agents that would not be out in the field, so to speak, driving vehicles. As you can imagine, the Border Patrol has multi-levels of responsibilities and that... I'm not recalling that the record before the arbitrator, insofar as I'm familiar with it, made clear that it was a sufficiently common arrangement within the office that there would be people who just could quite easily be spared from even the possibility of having to drive a vehicle. I thought the arbitrator on this record could agree with... Was it Mr. Hummer? Hoffman? Hoffman, sorry. Hoffman saying, look, we really can't do that. We can't say... Or we're going to have somebody who's just not going to be able to drive a vehicle because we're not going to retrofit the vehicles. That places a burden on everybody else. Why couldn't the arbitrator accept that testimony, thereby eliminating what I took to actually be the heart of the case, which is why couldn't they have just left her on administrative duty for the year until the license restriction lapsed? Yes. I think the record shows that there was contradictory information about the usage of vehicles. For example, there was another agent by the name of Ricardo Diaz who testified that basically there were specific assignments to specific agents. They talked about how there was a number of agents that had just worked administratively in the station as opposed to being out in the field. Eventually, the arbitrator... And this is the crux of this appeal. The crux of this appeal doesn't go towards whether or not she had driving restrictions or whether or not the agency could have accommodated her by allowing her to work administrative duties for three or four more months before she was terminated. What this appeal is for, and it's very direct, is that this arbitrator, in his analysis, used the reinstatement program. I actually think if he had gone into the analysis of basically whether four or three more months was an accommodation that the agency could do and has done for the other agents at the station or nationwide, we wouldn't be here. But the arbitrator did discuss the requirement of her position, the requirement that she have the ability to drive an automobile, and that as a result of this restriction, she was no longer able to fulfill that obligation. Correct? That is correct. He made that conclusion. However, specifically, he relied on a line of cases. For example, in his argument or in his analysis, he divided his analysis into two parts, essentially. He divided condition of employment and he also discussed district treatment. In other words, how she was treated compared to other agents at the sector. In both parts of his analysis, he cites the reinstatement program as a controlling factor on finding on behalf of the agency and not Ms. Potter. I thought he also cited the condition of employment as a factor and that he found that Ms. Potter must meet the conditions of employment both before employment and continuing during the term of employment and found that Ms. Potter could not perform her duties without a valid driver's license. When I look at some of the various conditions of employment, there seems to be quite a number of them that would require a vehicle and a valid driver's license, apart from the specific driver's license. What is your response to that? The arbitrator did cite to the conditions of employment. Correct. You are referring to basically the condition of employment analysis that starts on Appendix 30 and goes through 33. I need to highlight what he concludes in his analysis. He says specifically, the reasoning in Shoffner is more persuasive due to the ability for an employee to seek reinstatement once the impediment is removed. In other words, Shoffner basically was a line of cases that said, you don't look at things after the condition of, after the removal. We cited cases in Morgan and Street and others that said no, when those impediments are removed, that's a matter that can be considered by the arbitrator. I think to me, reading his decision in its entirety and reading through all of the analyses that he did, including the analysis relating to her failure to continue to meet the condition of employment, the comment about, well, Shoffner is more persuasive because she could be reinstated, seemed to me he was simply saying, by the way, I feel comfortable with the decision that I've made and feel comfortable that it falls on the Shoffner and Finale's side of things rather than Street and Morgan. But I think that's just simply a conclusion, not the sole reasoning behind his decision. And it's more of his exclusion of consideration. For example, the preceding sentence makes clear what is... Where are you reading from? I'm reading from the bottom of appendix 33. I said that he is, I just cited the lines that says his reasoning, Shoffner is more persuasive due to the reinstatement program being available to Ms. Pata. The preceding sentence says the arbitrator is limited to the line of cases. So what he's doing is excluding the consideration of the removal of her impediment four months later. He's excluding consideration of the cases cited by Ms. Pata, said that you can consider this information. And that's what we believe is the factional legal error in this case. And when we presented that issue in front of this court, we made clear in the reinstatement program doesn't even apply to GS 11s. However, it is strewn throughout this analysis. Why isn't that harmless error? He did state that he couldn't consider evidence after removal, but in fact, he did. He did consider that. He made no finding that the fact that she was going to be released from a restriction four months later was harmless. He made no such finding. He made no such finding that basically the impediment of the interlock device didn't matter. I think it would be different. But that was the basis for it. That's the reason why he discussed all these cases. Street and Morgan and Schaffner and Benally. And what he talked about was that this restriction was a condition of employment that Ms. Pata had to meet. However, he specifically divided the line. He created a benchmark and said, after this point, I'm not considering any evidence or legal argument that she could be reinstated. And that's where we think the factual legal error occurred. Especially including the fact that the reinstatement program on its face only applies to GS 12 and up. We pointed that out in the brief. We pointed that out that it was a red herring. And frankly, not only does he use that in the condition of employment analysis, but again, regarding the disparate of treatment, he says the arbitrator lacks authority. We believe the legal error comes from him not even attempting to address the union's arguments regarding the impediment being removed after the date of removal. And we believe that the different if he had not considered the reinstatement program and relied on it so heavily. Just to highlight that, we cited the testimony, because we are talking about the testimony of what actually happened in the arbitration. The arbitrator did ask, why do I even have to pay attention to this program? Why is it important? And agency counsel says very clearly. He says the misconduct remedy is not this hearing. It's not this grievance. It's with the reinstatement program. Was the license condition for one year? It was from one year and it expired in April of 2015. 2015? Yes, sir. So by the time of the October 15, 2015 arbitration hearing and the February 2016 arbitrator decision, that condition had lapsed? At the time of the arbitration and the decision, that restriction had gone away. In fact, it went away three to four months after the removal in April of 2015. So by the time we get to the arbitration, which is six or seven months later, and we get to the decision, which is 10 months later, that restriction is removed. And that's why Ms. Potter said, please consider these line of cases. That says once these impediments are removed, that's a factor that you can consider as an arbitrator. Arbitrator said, take that argument for reinstatement. He said, you can go to reinstatement throughout this program. So the arbitrator, she's looking to be reinstated in a way that's separate from challenging the removal in the first instance. There's separate processes? Yes. One that applied to Ms. Potter, and again, the reinstatement program didn't even apply. And our problem is that, Ms. Potter's problem is that her eligibility, her option to take the reinstatement program is used as a factor in his decision-making in this decision. Most on disparate treatment, how it was treated compared to other employees, and basically also in regards to his interpretation of condition of employment. You're into your rebuttal time. Do you want to read? I'll save it. May it please the court. The court should affirm because the arbitrator's finding that there was a nexus or a rational connection between the removal of Ms. Parra for her failure to maintain a driver's license and the efficiency of the service is supported by substantial evidence. The arbitrator in his decision goes through the substantial evidence in the record before him. He quotes extensively from the position description for a border patrol agent. Can you address what I think Mr. Martinez said was really the only thing that I think he said this appeal is about, which is the arbitrator made a very important factual mistake about eligibility for reinstatement and relied on that factual mistake. Can you address whether it's A, it was a factual mistake, and B, whether the arbitrator relied on it? Yes, Your Honor. First of all, there was no factual mistake. There are two agency memoranda in the record before the arbitrator. One is the memoranda from 2011, and then there's a memoranda from 2015, which was actually issued after she was removed. The 2015 memoranda puts the authority at the local level, and it states that individuals can be reinstated at the local level. The decision can be made for anyone GS-14 and below. GS-14 and below is a quote from that 2015 memorandum. I think their argument is based on the 2011 memorandum. That memorandum does not say that it is limited to GS-12s and above. It applies to border patrol agents. That was the testimony that was given at the hearing by Chief Huffman. You asked, secondly, does it make any difference? It's our contention it makes no difference at all. The decision of the arbitrator is based on the law. It's a correct decision based on correct law, correct statement of the law, and the substantial evidence. I would refer, in addition to going through all the evidence, the position description, the testimony of the Assistant Chief Huffman, which he credited at page appendix 32. I'll quote here. He says in his opinion, quote, as persuasive authority in a different case, the withdrawal of the appellant's ATCS certificate was held to be directly related to his qualifications to perform the duties of an air traffic control specialist position. That's the Thompson case from the MSPB. He goes on and then he also cites Curry versus the Department of Housing and Urban Development, which is a case where an employee's law license was suspended or revoked and they could no longer perform their duties as an attorney and they were removed. So at that point of the opinion of the arbitrator, he's stating that those are the persuasive authorities that he is relying on. He also had, before that point in his opinion, he had cited to the opinions from the MSPB that involved the revocation of a driver's license. There's some Schnaufer case that all these are one-year revocations of driver's license and employees are removed because they cannot meet the conditions of their employment. Can I ask, this may be just a curiosity, but does the record tell us anything about whether Ms. Parra has in fact sought or obtained reinstatement? The record does not tell you. She is still- Some knowledge though, there is knowledge about that? Yes, Your Honor. I would point out that she was removed on November 25th, 2014. The three-year period has not yet elapsed. Oh, I see. It's a three-year. She still has three years to apply under the agency memoranda. If she applies within that window, she doesn't have to go back through the academy. Now, that's not saying that she will get it. I'm not making any sort of representation along those lines because there are all these requirements. You have to be physically fit, mentally fit, background investigation. Everything has to be gone through. The window is still there. To answer your question, it's more information as of yesterday that she had not applied. Ms. Kirschner, the arbitrator said on the bottom of appendix page 33, says the arbitrator is limited to reviewing the facts as they were before the deciding official. Yes, that is- The arbitrator didn't consider the fact that the interlock requirement had already been lifted. We agree that that is a misstatement of the law as we stated in our brief, but it's our contention that it's a harmless error because, in fact, he did look at all the facts before him. He found as a fact in his decision that her license had been reinstated. In fact, that was the majority of the arguments before the arbitrator. Can you show me where he found that as a fact? Sure, yes. If the court could look at appendix page 4. This is in the fine print at the top. April 9th, 2015. Paris valid. New Mexico driver's license reinstated. As I was just saying, the majority of the argument before the arbitrator was directed to the fact that this was a temporary- by the time of the hearing. The arbitrator, I wanted to point out, in his decision, he specifically credits the testimony of the deputy chief who's acting as the acting chief, Huffman, that keeping her on administrative duties would have wasted a Border Patrol agent position. Because of that, because it's wasting a position that otherwise- She was already in that position. She was already working in an administrative position. What had happened was there was an incident where she attempted suicide. Because of that, she was deemed medically unfit to serve as an agent. Her weapon and her badge were removed. She couldn't be a Border Patrol agent. For that period of time, she was restricted to administrative duties. That restriction went into effect, I believe it's in- I can't recall when it started precisely, but it started when that incident occurred. As recently as December of 2013, the department psychiatrist still deemed her unfit. Then the traffic incident that she's in. At that point, now she has an additional problem because now she can't drive. Her driver's license is taken away, and all she can do is have an interlock license. Can I ask, and then the removal doesn't occur, actually not proposed until October of 2014, and I guess removal very shortly after that. At that point, so by October 2014, does the record tell us anything about the status of essentially the medical-based assignment to the office? What I'm thinking obviously is if it were quite clear then that she was going to have to stay in that status for the medical reasons for the next six months, and I wonder- There were two cases proceeding independently. In the case regarding her medical fitness, after December of 2013, they presented, Ms. Power through her attorney presented evidence that she now was fit for duty. They presented their independent psychiatric report that there should be no impediment to her serving as a border patrol agent. But at that point in time, the license was already revoked and she had only the interlocks. At that point in time, had her license not been revoked, she would have been entitled to reinstatement, correct? This is on the line of cases dealing with these type of situations. She was- What's odd about here is that her physical and mental disabilities that put her on administrative leave, then she's demonstrated she's okay and she's not disabled any longer. Then at that, under the line of case, she's entitled for reinstatement. But if she loses her license and then gets back her license during this process, she's not entitled for- To clarify, at the point where she contends that she's physically fit, there had not yet been a decision by the agency agreeing or disagreeing with that. But assuming that the agency agreed, then she would have been returned to border patrol agent duties, assuming that she didn't have a problem with the license. She was never fired, so it's not a question of being reinstated because you're not fired, you're not terminated. I guess what I was asking about before was the opposite assumption. Suppose that the agency had said, on the medical fitness, we disagree with you. We think you still need to stay in the office. Again, suppose they said, and we think you need to stay in the office until May 2015. At that point, the absence of a driver's license couldn't matter to the job that you were going to have her do during that period. If the agency had disagreed with the report from her independent psychiatrist and based their disagreement on the agency's psychiatrist, presumably the agency would have then gone forward with that and made a decision because they had already proposed her removal for being unfit. Understand that proposal had already gone out, and it was being held in abeyance because they wanted to get more information, and that additional information came in saying she's fit. Then it's up to the agency to evaluate all the evidence before them, make a decision. That was put aside because, frankly, from the agency's viewpoint, it was totally irrelevant at that point. She couldn't drive. She couldn't work as a border patrol agent. As the acting chief Huffman testified, her situation was wasting a border patrol agent position that he needed to have filled by a border patrol agent. When you say that, and this is what got me asking you questions, I'm not sure that that's a legally grounded basis to remove somebody, that they're wasting a border patrol position. Well, the basis, the reason she's removed is because she can no longer meet the conditions of her employment. Okay. Well, that's different. Yes. Yes, it is different. As he said, in addition, he could no longer accommodate her. It is wasting a position, and he has to run the office, but it's precisely because she can't function as a border patrol agent. I wasn't taking away that reasoning. I was just explaining further. Just to conclude, the arbitrator does make a finding that her removal was rationally connected to the efficiency of the service. That's a factual finding he made. It's supported by substantial evidence in the record, and we think the court should affirm. Okay. Thank you. Thank you. Mr. Martinez, you got two minutes and a little over two minutes. Yes, Your Honor. Did Roy address those issues? Again, the agency is still making the argument that the reinstatement applies to Ms. Pata. You heard that throughout the hearing, throughout their brief, and in this very argument. It is clear from the language of the program it only applies for GS-12. This is on the appendix 484. Had the arbitrator's decision been based solely on the reinstatement issue, then I think you would have a stronger case. But the arbitrator made the decision on other grounds as well. And that's when we go to, does it make a difference? When you look at the language, for example, disparate treatment, there was evidence of another agent, Agent Delgado, that basically retained his job for almost identical circumstances. Same charge, aggravated DUI, all those things, same state, so he has the same restrictions. What he specifically says is, no, but your case is different, Ms. Pata, because the provision for reinstatement was administered after your case. In other words, you're eligible for reinstatement, and that's why you're not like and similar or comparable to Agent Delgado. He also makes the, I would agree with you, sir, but for the fact of his very language says, that may be an error, but that's an error as to the statement of reinstatement. That's not an error as to the reasoning for the grounds of removal. But he uses the foundation of the reinstatement program to prove that Ms. Pata's arguments have no merit. Specifically, Delgado being comparator, no merit because of the reinstatement program. The conditions of employment, our simple point was the Schaffner line of cases and Street and Morgan, which talk about considering factors after their decision regarding the impediment, should be read in concert or together. What he specifically said is, no, those are two separate matters that I'm not going to intertwine specifically because of the reinstatement program, and he makes that clear in his arguments. Okay, you're out of time, Mr. Martinez. I'll let you conclude, make a concluding sentence if you want. Yes, sir. The reinstatement program was front and center throughout the arbitration, throughout this decision, and even in this argument. To say that it was a harmless error, I think is a stretch, just based on the evidence that was before the matter. Also, if I may, the complication of this was that she was on administrative duties for a medical issue. The agency never removed her from that status prior to going forward with this removal. Again, those were facts that were just not paid attention to by this arbitrator because of the reinstatement program. Okay. Thank you, sir. Our next case is N. Ray